**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

                              Plaintiff,

           - against -

ANCHOR FROZEN FOODS CORP.,
DIVERSIFIED PROCESSORS, INC.,
PROCESSORS, INC., PREMIUM FROZEN
FOODS, LTD., ADVANCED FROZEN FOODS,
INC., ADVANCED FOODS CORP., ROY S.
TUCCILLO, Individually and as an Officer, and
ROY S. TUCCILLO, JR., Individually and
as an Officer,

                         Defendants.
------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 17-6559 (GRB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     PRELIMINARY STATEMENT

       This Memorandum and Order addresses the discovery motions currently pending before

the Court.  First, the Secretary of Labor ("Plaintiff" or the "DOL") seeks to compel the

Defendants "to fully search for and produce electronically stored information in response to the

Secretary's March 2, 2018 document requests."  DE 94.  Second, Defendants have filed a letter

motion seeking (a) leave to serve an amended employee list "with their subpoena concerning

applications for day-care benefits; and/or (b) Motion to Compel Nassau County, the New York

State Office of Children and Family Services ("OCFS") and the New York State Office of

Temporary and Disability Assistance ("OTDA") (collectively hereinafter, the "Agencies") to

respond to the subpoena as required by the Court's May 31, 2019 Order (the "Order); Dkt.

No. 99) with respect to the list of 25 individuals identified by the defendants on June 7, 2019."

According to the Defendants, after they served the required list of employees for whom they

sought responsive documents, the Agencies refused to respond with respect to ten (10) identified individuals who inadvertently were not identified in Exhibit "A" to the subpoena.  *See* DE 100.  Defendants oppose DE 94 and plaintiff opposes DE 100.  Further, in response to the Court's prior Order, counsel for the Nassau County Defendants provided certain documents for *in camera* review.  The cover letter with respect to that submission is filed at DE 109 and that matter is being addressed in a separate Order.  The motions are adjudicated as follows below.

## II.    RELEVANT BACKGROUND

Plaintiffs instituted this action against Defendants alleging violations of the FLSA for the failure to pay overtime and back wages to several dozen food processing workers employed by the Defendants.  These employees operated seafood and meat processing machinery and packed processed food for distribution.  The DOL alleges that the Defendants failed to pay their employees any wages for hours worked in excess of 40, and that those employees who were paid for time worked in excess of 40 hours were paid far below proper overtime rates – or even minimum wage rates.  According to the DOL, the Defendants also undertook a scheme to hide these violations by destroying timecards, creating sham payroll records, and paying certain employees solely in cash.

The Court held a conference on May 31, 2019 to address several discovery motions concerning non-party subpoenas which Defendants served on the movants Nassau County Department of Social Services c/o County of Nassau (collectively the "County"), the New York State Office of Temporary and Disability Assistance ("OTDA"), and the New York State Office of Children and Family Services ("OCFS").  These subpoenas sought the production of "applications for social services benefits…from 2014 and 2016" filed by the Defendants' employees with the County, OTDA, and OCFS.  Defendants contend that in connection with

these applications for social service benefits, their employees submitted information regarding the wages they received from and hours they worked for the Defendants and, consequently, these applications contain information which may contradict the DOL's contention that the employees worked overtime hours.

## III.   THE PROCEDURAL POSTURE

The Defendants previously filed two sets of non-party subpoenas with the Court.  The first was filed on September 7, 2018 (the "First Subpoena") and was annexed to a letter requesting that the Court "so order" the proposed subpoena.  *See* DE 52.  This subpoena sought "applications for social services benefits filed by any individual listed on the attached list from 2014 to 2016" from the "Nassau County Department of Social Services."  *See* DE 52-1.  The list attached to the First Subpoena was three pages in length and identified the names of 73 individuals.  *See* DE 52-1.  In response to Defendants' motion, the County acknowledged that the list identified 73 individuals and requested that the Court schedule a conference to discuss the First Subpoena.  *See* DE 65.

On January 24, 2019, the Court held a conference and directed Defendants to "prepare a proper subpoena to be served on the [County], as well as upon two New York State entities (*i.e.* the specific entities identified by [the County's counsel])" contingent on Defendants confirming that a FOIL request had been filed and adjudicated.  *See* DE 66.  After confirming that a FOIL request had indeed been adjudicated, the Defendants filed a second non-party subpoena to be "so ordered" on January 30, 2019 (the "Second Subpoena").  *See* DE 67.  The Second Subpoena was addressed not only to the County but also to the OTDA and OCFS.  *See* DE 67-3.  The list attached to the Second Subpoena consisted of only 2 pages instead of 3 and only identified the names of 39 individuals as opposed to the original 73.  *See* DE 67-3.  A comparison of the lists

3

showed that one of the original three pages was omitted, apparently inadvertently, from the list attached to the Second Subpoena. *Compare* DE 67-3 *with* DE 52-1.

After the omission was addressed, the Court "so ordered" the Second Subpoena but stayed compliance so that the affected non-parties had an opportunity to raise any issues regarding the contents of the subpoena. *See* DE 68. Several motions to quash the Second Subpoena followed and a conference was conducted by the Court on May 31, 2019 to address the motions. At the motion conference, the Court found that the Second Subpoena was "overly broad and unduly burdensome" and, as a result, the scope of the subpoena was narrowed to cover solely "documents of employees who were applying for day care benefits." *See* DE 99. The Court further modified the subpoena to limit the production of these forms to 25 employee applicants for day care services from the list attached to the subpoena served by the Defendants. The Court permitted the Defendants to choose whichever 25 employees they wanted.

As to the 25 employees whom the Defendants were to select, the non-parties were directed "to search those 25 files as well to determine if there are any forms, documents, etc. where the applicant has been asked to list the hours he/she worked for the Defendants or the income/wages he/she received from the Defendants for that time period." Any responsive documents were to be provided to the Court for an *in camera* review and determination whether they were to be produced to Defendants.

Thereafter, the Defendants served the County, OCFS, and OTDA with a narrowed list of 25 individuals/employees who applied for day care benefits. Out of the 25 individuals selected, 10 were not included among the two-page list of 39 individuals attached to the "so ordered" Second Subpoena. Each of the 25 individuals were, however, included among the three-page list of 73 individuals attached to the First Subpoena. The non-parties objected to producing any

4

responsive documents regarding the 10 individuals not included in the list attached to the "so ordered" Second Subpoena because they were not technically "so ordered" by the Court.  As a result, Defendants filed the instant motion to compel compliance with the Second Subpoena or, alternatively, for leave to amend the Second Subpoena "so ordered" by the Court.  *See* DE 100.

IV.   **THE PENDING MOTIONS**

   A.   **Defendants' Motion to Compel or for Leave to Amend**

      *1.*   ***Defendants' Position***

Defendants request that the Court enter an order compelling the County, OTDA, and OCFS to search for documents responsive to the Second Subpoena for each of the 25 individuals identified or, alternatively, request leave to re-serve an Amended Second Non-party Subpoena with the full list of 73 individuals.  *See* DE 100.  Defendants' counsel argues that his office inadvertently omitted from the Second Subpoena the first page of the list of employees.  As Defendants correctly point out, a comparison of the list attached to the Second Subpoena with the list attached to the First Subpoena, reveals that they are the same lists except that the first of the three pages is omitted from the list attached to the Second Subpoena.  *Compare* DE 67-3, *with* DE 52-1.  Defendants argue that they will be prejudiced if they are limited to choosing 25 out of the 39 individuals listed on the "so ordered" Second Subpoena because a large portion of individuals on the list attached to the Second Subpoena likely did not apply for benefits and thus no responsive documents will be produced for them.  Consequently, Defendants argue that they should be able to choose the remaining 10 individuals from the original list attached to the First Subpoena.  Defendants further argue that their request will not prejudice the non-parties because they would have had to conduct searches for 25 employees regardless.

## 2. *Non-Parties' and Plaintiffs' Positions*

▪ **Non-Parties OCFS and OTDA** oppose Defendants' motion on essentially the same grounds that they initially opposed the Second Subpoena, namely, that there are extensive statutory and regulatory confidentiality provisions protecting the 10 individuals and that these regulations require the agencies to oppose any efforts to obtain these confidential documents. *See* DE 101, DE 103.

▪ **The County** opposes the Defendants' motion arguing that the potential employees are prejudiced by having their files "unnecessarily" reviewed in these proceedings and that the County has been prejudiced by expending time and resources on what it perceives to be unnecessary motion practice. *See* DE 105. The County also requests that the Court preempt any attempt by Defendants to request additional searches and productions from the non-parties.

▪ **The Secretary of Labor** opposes Defendants' motion arguing that the Defendants should have properly narrowed their requests months earlier and that the Defendants' request will delay the continuation of depositions considering the time necessary to rule of the motion and to serve formal service of the amended subpoena. *See* DE 104. The Secretary of Labor argues that Defendants' should be held to the Second Subpoena "so ordered" by the Court under these circumstances because the sample size of 39 individuals is sufficient to choose 25 appropriate individuals from. If Defendants' motion is granted, the Secretary of Labor seeks a ruling preventing Defendants from making further requests for subsequent searches of any other individual's confidential benefits application and a date certain for the production of documents. *See* DE 104.

### 3.      *Resolution*

Having reviewed the lists of employees attached to the First and Second Subpoenas, it is clear to the Court that the Defendants inadvertently omitted the first page of the list of individuals when processing the Second Subpoena.  The arguments set forth by the non-parties and Secretary of the Labor to a degree argue form over substance here and do not raise any persuasive arguments or cite any case law which would support the Court's denying  the requested relief.  The Court notes – and the Defendants have pointed out – that the County, OCFS, and OTDA must expend the time and resources to search for responsive documents for 25 individuals.  Other than a procedural formality (*i.e.,* the "so ordering" of the non-party subpoena with the complete list of 73 individuals) which can easily be cured, it is of little consequence which individuals are the subject of the search since the Court already directed that this procedure be a "sampling."   Therefore, Defendants' motion for leave to file an Amended Second Non-Party subpoena with the complete list of 73 individuals is GRANTED.  The Court will "so order" the subpoena once it is filed.  Defendants have one week to make the filing.

### B.      *In Camera* **Review of Documents Submitted by the County [DE 108]**

At the May 31, 2019 conference, the Court narrowed the scope of the Second Subpoena to "documents of employees who were applying for day care benefits," in particular the "Day Care Services Employment Verification Form" used by the County.  However, the Court also directed the County, OCFS, and OTDA to search the files of the 25 individuals to be selected by the Defendants "as well to determine if there are any forms, documents, etc. where the applicant has been asked to list the hours he/she worked for the Defendants or the income/wages he/she received from the Defendants for that time period."  Any responsive documents were to be

7

provided to the Court for an *in camera* review for a final determination as to whether they are to be produced to Defendants.

The OCFS advised the Court that it does not possess any responsive document for any of the 25 individuals selected by the Defendants for an *in camera* review.  *See* DE 106-107.  The OTDA did not file any correspondence on the docket confirming whether it was or was not in possession of any responsive documents for an *in camera* review.  ODTA is directed to do so **within ten days**.

The County has submitted responsive documents for an *in camera* review.  *See* DE 109. However, it does not appear that the County submitted any responsive documents concerning the 10 individuals who were disputed.  *See* DE 108.  The document submitted by the County must be received and a final determination as to the whether they should be produced to the Defendants must be made.

### C.      Plaintiff's Motion to Compel Production of ESI [DE 94]

#### 1.      *The Plaintiff's' Position [DE 94]*

The Court notes at the outset that the motion does not comply with Local Civil Rule 37.1 and is therefore procedurally defective in that it fails to include any specific recitation of the discovery demands in dispute.  Nonetheless, based on the memoranda submitted, the Court infers that the document requests at issue generally relate to the Defendants' wage and hour policies. Notwithstanding this deficiency, the Court is proceeding with its adjudication of the motion.

Plaintiff's motion seeks to compel the individual Defendants Roy S. Tuccillo and his son Roy S. Tuccillo Jr. ("Individual Defendants") to conduct a complete search and production of emails and text messages from their personal Gmail accounts, AOL accounts, and cell phones. *See* DE 94.  Previously, in July 2018, the Plaintiff received the Defendants' office hard drive that

8

had been accessed and copied by the New York State Attorney General's Office.[1]  *See* DE 47,

DE 48.  Although the hard drive contained Defendants' corporate emails, it purportedly lacked

the majority of the emails and text messages stored in the Individual Defendants' personal Gmail

accounts, AOL accounts, and cell phones.  The parties do not dispute that the Individual

Defendants utilized their personal Gmail/AOL accounts and cell phones to conduct business

during the course of their employment with Defendants.  *See* DE 94 at 2.  Plaintiffs assert that

the Individual Defendants' personal email accounts and cell phones store documents relevant to

Defendants' wage and hour practices.  *Id.*  This assertion is based on deposition testimony from

the Individual Defendants admitting that they used their personal email accounts to circulate lists

of employees and their hours.  *Id*.  After it was revealed that Individual Defendant Roy Tuccillo

Jr. had not searched his personal email accounts and cell phone in response to Plaintiff's

document requests, counsel began to meet and confer regarding the search and production of

responsive emails and text messages.  *See id*.

According to Plaintiff's counsel, the Defendants initially provided "contradictory" and

"spurious" excuses as to why no supplemental production was necessary (*i.e.* the Defendants did

not have access to responsive emails).  However, the Defendants eventually agreed to run a list

of initial search terms proposed by Plaintiff's counsel and to provide information about any

possible spoliation of ESI.  *See* DE 94 at 2-3.  On April 12, 2019, Defendants' counsel advised

Plaintiff that his "clients wound up completing the searches on their own" which yielded

approximately 40 emails from the senior Tuccillo's AOL account.  Plaintiff contends that this

supplemental production is plainly incomplete since it omits "thousands of [emails]" known to

---

[1]     Initially Defendants claimed that they did not utilize emails or text messages concerning their wage and hour practices and did not produce any of these documents.

exist from the production received from Defendants' hard drive which copy the senior Tuccillo's AOL email.  Further, according to Plaintiff's counsel, Defendants have yet to produce **any**:  (1) text messages from the seior Tuccillo's or Tuccillo Jr.'s cell phones; and (2) email messages from Tuccillo Jr.'s Gmail or AOL account.

Plaintiff also argues that Defendants' counsel has failed to provide a satisfactory response to its preservation inquiries.  Defendants' counsel has indicated that the Defendants have no information about whether emails were deleted, or about what steps the Defendants took to preserve documents.  Plaintiff takes issue with counsel's failure to oversee the Defendants' compliance with their ESI production and preservation obligations.  Plaintiff requests an order compelling Defendants to:

(1)   complete their production of responsive ESI (including but not limited to Gmail and AOL messages, and texts) by a date certain, with the possibility of sanctions for noncompliance;

(2)   identify what efforts they have taken to preserve ESI since litigation was reasonably anticipated; and

(3)   identify, to the extent known, what ESI has been lost or destroyed as a result of any failure to preserve.

### 2.   *Defendants' Position [DE 96]*

First, Defendants argue that the requested ESI is not relevant to the claims and defenses in this action.  While Defendants concede that the Individual Defendants maintained personal email accounts and utilized cell phones to conduct business, they argue that those personal email accounts and/or cell phones were not used for any purpose that would be relevant to the claims and defenses at issue (*i.e.,* wage and hour policies).  Defendants claim that the only emails sent to the Individual Defendants' personal email accounts were from other office staff (*i.e.,* the

10

payroll clerk) and concerned submissions to payroll providers.  Since Plaintiff disputes the veracity of these payroll submissions and, thus, will likely not rely on them, Defendants question the necessity of providing those emails on which the Individual Defendants were copied.

Second, Defendants argue that the Plaintiff has received most, if not all, responsive documents through the production made from Defendants' hard drive.  As such, Defendants argue that Plaintiff's current attempt to seek ESI stored on the Individual Defendants' personal email accounts and cell phones merely serves as a fishing expedition without knowing whether it will produce any relevant information.  Supposedly, Plaintiff has admitted that the ESI sought is not to prove its claim, but to potentially discredit any witnesses that the Defendants may introduce at trial.  It should be noted that the Defendants do not provide the basis for this assertion.

As to its preservation efforts, the Defendants argue that they have not purposefully hid any documents and/or flouted their discovery responsibility, including the duty to preserve relevant evidence.  Defendants "were under the impression that all relevant ESI had been presented on their computer system hard drive."  Defendants' counsel notes that the Defendants were represented by different counsel during the Secretary of Labor's investigation of the Defendants prior to this litigation being filed.  According to Defendants' counsel, once he was retained, he advised Defendants of their discovery responsibilities including the retention and preservation of ESI.  At the time, Defendants indicated that that their computer and system records were in the possession of the New York State Attorney General's Office and there was no further ESI that they were aware of relevant to the wage and hour policies at issue. Defendants' counsel claims he advised Defendants to secure and preserve all documents not in the possession of the State AG's Office which included directives not to delete or purge any

relevant emails or other ESI.  Defendants' counsel did not provide any sworn certification to this effect.

Further, Defendants' counsel also claims to have advised Defendants, on two separate occasions, of the available options for performing searches of ESI including the hiring of an outside expert to search their systems to determine whether additional ESI existed and/or whether any information was deleted.  Due to financial constraints, Defendants opted to conduct the search on their own.  Any documents that were located were purportedly provided. Defendants also explain that they were a small operation employing anywhere from 10-35 people and were no longer in operation at the start of this litigation.  As such, Defendants argue that they should not be held to the same standard as a large company.

### 3.      Resolution

Defendants' current counsel inherited a situation where prior counsel did not adequately oversee the retention and production of ESI in this matter.  Defendants further take the position that they are a small operation and should not be held to the discovery standards expected of larger businesses and entities.  Unfortunately here, there is no real explanation of how the clients conducted their document searches and/or whether any ESI was deleted, except for the fact that the clients apparently opted to do the searches themselves.  Since there has been no denial here, it is clear that no responsive text messages were produced from the Individual Defendants' cell phones and that no responsive emails were produced from Roy Tuccillo Jr.'s personal email account.  "A party's discovery obligations do not end with the implementation of a 'litigation hold'—to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 432 (S.D.N.Y.2004); *Hutchins v.*

*Palmer*, CV 12-5927, 2015 WL 13713335, at *12 (E.D.N.Y. Mar. 31, 2015) (same); *Alter v. Rocky Point School Dist*., 13-1100, 2014 WL 4966119, at *2 (E.D.N.Y. Sept. 30, 2014) (". . . all counsel in the case are responsible for directly overseeing, supervising and reviewing the discovery efforts taken by the clients. The ultimate responsibility is the attorney's, not the client and there is substantial case law in the Second Circuit confirming counsel's obligations in this regard. Failing to personally oversee searches for relevant discovery leaves an attorney open to sanctions for inadequately supervising such discovery").  That did not happen here.

Although Defendants argue that the requested search and production is a "fishing expedition," the Court disagrees.  Plaintiff is not seeking all of the Individual Defendants' personal emails and text messages.  Rather, counsel is seeking only those emails and text messages which relate to Defendants' wage and hour policies.  After the Individual Defendants admitted that they utilized their cell phones and email accounts, among other things, to send lists of employees and hours, it is curious how only 40 emails exclusively from the senior Tuccillo's email account were produced.  On the other hand, it appears that the Plaintiffs overstate the deficiencies in the Defendants' productions.  Merely because "thousands" of emails were pulled from Defendants' hard drive copying the Individual Defendants' personal email accounts (which was not then reproduced in the supplemental ESI production), it does not mean that Defendants' supplemental production was deficient by "thousands" of emails.  The emails Plaintiffs cite and which were pulled from the hard drive may not have all been responsive to Plaintiffs' document requests.

The Court finds that Plaintiff is entitled to relief here and is GRANTING the motion to compel.  By January 6, 2021, Defendants shall complete the ESI production, including but not limited to Gmail and AOL messages as well as texts related to and limited to Defendants' wage

and hour policies.  Defendants' counsel is required to (1) identify the efforts which were and have been taken from the outset by Defendants to preserve responsive ESI, including Gmails, AOL messages and texts; (2) supervise and go through the process of conducting the searches along with the clients to ensure compliance with the Court's Orders; and (3) make a good faith investigation  and assessment with the clients to determine, from the time the obligation to preserve arose in this matter, what documents were or may have been lost or destroyed as a result of any failure to preserve.  Any lack of compliance with these directives will result in further remedial action by the Court.  Defendants' counsel shall provide the Court with a written report as to the status of these three items by January 20,202.

Likewise, the parties shall file a joint letter by January 20, 2021 informing the Court of what further discovery, if any, needs to be completed, including any expert discovery.  Once the Court receives that information, it will set up the next conference.

At one point, the parties expressed an interest in having a settlement conference.  If counsel still desire that option, they should write and advise the Court.  However, no settlement conference will go forward until the foregoing issues have been resolved.

**SO ORDERED.**

Dated: Central Islip, New York
        December 3, 2020                              /s/ A. Kathleen Tomlinson
                                                     A. KATHLEEN TOMLINSON
                                                     U.S. Magistrate Judge